UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| John Rella, | ) | Civil Action No.: 1:16-3990-RBH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Nancy Berryhill, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

Plaintiff John Rella ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Shiva V. Hodges, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #19].

**Procedural History**

On October 3, 2011, Plaintiff filed an application for DIB alleging disability with an onset date of October 2, 2009. In a letter dated July 23, 2013, Plaintiff amended his alleged onset date to July 31, 2011. This application was denied initially and upon review. Thereafter, Plaintiff testified at a hearing before Administrative Law Judge ("ALJ") Edward T. Morriss on July 24, 2013. After this hearing, the ALJ issued an unfavorable decision on August 30, 2013. On November 4, 2014, the Appeals Council remanded the claim because the hearing decision did not contain a complete evaluation of the opinion evidence presented by non-examining state agency consultants, and because there was unevaluated

evidence in the record, including police records, pertaining to Plaintiff's claim. [ECF #9-3, Ex. 7A]. A second hearing occurred on May 6, 2015. After that hearing, and after considering the additional information included in the Appeals Council's remand order, the ALJ denied Plaintiff's claim on June 25, 2015, finding that Plaintiff was not under a disability as defined in the Social Security Act, as amended. [ECF #9-2, p. 22]. In the decision, The ALJ determined that, although Plaintiff suffers from "severe" mental impairments, he still retained the residual functional capacity to perform a full range of work, with additional limitations [ECF #9-2, pp. 16]. The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.
>
> (2) The claimant has not engaged in substantial gainful activity since July 31, 2011, the alleged onset date. (20 C.F.R. 404.1571 *et seq.*).
>
> (3) The claimant has the following severe impairments: mood disorder and personality disorder (20 C.F.R. 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to jobs involving understanding, remembering, and carrying out simple instructions. He is precluded from working in close proximity or coordination with co-workers. He is limited to no more than occasional interaction with supervisors and no ongoing interaction with the public.
>
> (6) The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).
>
> (7) The claimant was born on March 14, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

> (8) The claimant has limited education and is able to communicate in English (20 C.F.R. 404.1563).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 494.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2011 through the date of this decision (20 CFR 404.1520(g)).

[ECF #9-2, pp. 18-22].

Plaintiff requested a review of the ALJ's decision. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the decision of the ALJ the final decision of the Commissioner. [ECF #9-2, p. 2]. On December 27, 2016, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #16; ECF #18], and the Magistrate Judge issued her Report and Recommendation on September 13, 2017, recommending that the Commissioner's decision be affirmed. [ECF #19, p. 42]. Plaintiff filed objections on September 27, 2017. [ECF #21]. Defendant replied to these objections on October 11, 2017. [ECF #22].

## **Statement of Facts**

Plaintiff, who was fifty-two on the date of the most recent hearing, held on May 6, 2015, allegesthat he has been unable to work since the alleged amended onset date of July 31, 2011 due to bipolar disorder, Post Traumatic Stress Disorder, lower back impairments, and mental impairments.

[ECF #16, p. 4]. His medical history and background are adequately set forth in the R &R. [ECF #19, pp. 2-11]. Briefly stated, Plaintiff began seeking treatment from Tammy Misdom, LPC at Inlet Counseling Center on September 10, 2009, where he reported anger at work, including his inability to communicate without becoming aggressive. [ECF #9-9, Ex. 14F]. He was diagnosed as having a mood disorder, not otherwise specified. His global assessment of functiong ("GAF") score was 60. [ECF #9-9, Ex. 14F]. Plaintiff continued counseling at Inlet Counseling Center through November of 2009. On October 2, 2009, Plaintiff presented to pyschiatrist Marshall A. Staton, M.D. ("Dr. Staton") for an evaluation. Dr. Staton diagnosed Plaintiff with bipolar disorder. [ECF #9-8, Ex. 1F]. Plaintiff continued to treat with Dr. Staton through the next several years. During the course of treatment, Dr. Staton prescribed a few different medications to Plaintiff depending upon the side effects described in an attempt to help Plaintiff resolve his mental issues. For example, Dr. Staton prescribed Prozac in 2010, but when Plaintiff complained of its side effects, Dr. Staton instructed Plaintiff to take Celexa and Lamictal. [ECF #9-8, 1F].[1] Dr. Staton completed a questionnaire on May 1, 2012, indicating Plaintiff suffered from bipolar I disorder, and that he exhibited serious work-related limitations in function due to his mental condition. [ECF #9-8, Ex. 7F]. On a questionnaire that Dr. Staton filled out in September of 2012, he indicated that Plaintiff had "marked" difficulty in maintaining social functioning, and had several moderate and marked impairments in the workplace environment. [ECF #9-8, Ex. 8F]. On July 8, 2013, Dr. Staton drafted a letter stating that Plaintiff's diagnosis of bipolar disorder continues with Plaintiff presenting with a depressed affect. [ECF #9-8, Ex. 13F]. Finally, Dr. Staton again filled out a questionnaire on March 24, 2015 noting that Plaintiff had difficulty concentrating or thinking, and the same marked limitations in the work environment as had been found

---

[1] This particular questionnaire was not explicitly referenced in the most recent ALJ hearing decision.

previously, except that Dr. Staton noted Plaintiff had "extreme" impairment in the area of ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [ECF #9-9, Ex. 15F]. Plaintiff was also treated by Robert E. Kimpton, M.D. ("Dr. Kimpton). Dr. Kimpton observed Plaintiff after he complained of a pounding headache and inability to sleep. Dr. Kimpton recommended a sleep study to Plaintiff, but Plaintiff did not participate.

On March 4, 2010, Plaintiff was terminated from his job due to inappropriate comments made during a meeting. Through his treatment, Plaintiff reported behavior indicating that he had been somewhat "manic" at times. He also attempted to obtain his GED but he failed the exam. Plaintiff presented to Dr. Douglas R. Ritz, Ph. D. ("Dr. Ritz"), for a consultative examination on January 5, 2012. [ECF #9-8, Ex. 5F]. Plaintiff described the following behavior to Dr. Ritz: two to three days of depressed mood followed by two to three days of elevated mood; buying things he could not afford, such as three vehicles, when he was in an elevated mood; developing anger and road rage; nightly drinking; and a negative attitude. [ECF #9-8, Ex. 5F]. Plaintiff also indicated he could perform household chores, and Dr. Ritz noted he had good hygiene, maintained relevant conversation, was alert and responsive and showed fair insight and judgment. [ECF #9-8, Ex. 5F]. Dr. Ritz indicated that Plaintiff's anger and irritability had "the possibility of intruding in his ability to perform in a work-related setting particularly if there was a job that would involved frequent interaction with co-workers or the public." [ECF #9-8, Ex. 5F]. Further, he stated Plaintiff "might be able to handle an unskilled more solitary type work setting." [ECF #9-8, Ex. 5F]. Dr. Ritz assessed Plaintiff as having bipolar disorder with a GAF score of 52. [ECF #9-8, Ex. 5F].

On January 20, 2012, state agency consultant Judith Von, Ph. D. ("Dr. Von") completed a psychiatric review of Plaintiff and indicated in a mental residual functional capacity assessment that

Plaintiff was moderately limited with respect to the following abilities: work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [ECF #9-3, Ex. 1A]. She also indicated that Plaintiff was not well-suited to work with the public and would be better served in a solitary position. [ECF #9-8, Ex. 5F]. On May 31, 2012, another state agency consultant, Michael Neboschick, Ph. D. ("Dr. Neboschick") assessed Plaintiff has having moderate difficulties in both maintaining social functioning and maintaining concentration, persistence, and pace. [ECF #9-3, Ex. 3A].

At the first hearing, a vocational expert Dixon Pearsall, Ph. D. ("Dr. Pearsall") reviewed the testimony and testified that the restrictions identified by Dr. Von would not eliminate all work, but would diminish work at an exertional or skill level such that it would be functionally impossible for Plaintiff to work. He also noted Dr. Ritz's GAF score of 52 and noted it indicated an inability to work in a competitive environment. At the second hearing, vocational expert Tonetta Watson-Coleman considered several hypothetical questions regarding varying levels of Plaintiff's inability to work. She testified that a hypothetical individual of Plaintiff's vocational profile with no exertional limitations who was limited to understanding, remembering, and carrying out simple instructions; who was unable to work in close proximity or coordinating with other co-workers, with limited to occasional interaction with supervisors and no ongoing public interaction could find employment at a medium exertional level. Otherwise, she found that Plaintiff could not perform jobs in the economy if that individual had a "substantial loss of ability to respond appropriately to supervision and co-workers," if the individual suffered from deficiencies in concentration, persistence or pace, or if the individual experienced

6

repeated episodes of deterioration or decompensation at work that would cause him to act inappropriately. Plaintiff's wife also testified at the hearing regarding her opinion that Plaintiff did not act appropriately with parents and other employees while at her daycare center. Finally, the record included police records from late 2007 indicating that Plaintiff had threatened and intimidated a neighbor. [ECF #9-6, Ex. 18E].

## Standard of Review

**I.     Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not

7

abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

**II.     The Court's Review of the Magistrate Judge's Report and Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R&R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

Here, after reviewing the record, including the briefs filed by the parties, the Magistrate Judge recommends affirming the decision of the Commissioner. Plaintiff raises the following objections to the recommendation by the R&R: (1) the ALJ did not properly account for Plaintiff's moderate difficulties in concentration, persistence, and pace or properly consider the limitation to occasional

8

interaction with supervisors within the RFC; (2) the ALJ did not properly assess opinion evidence; and (3) the ALJ erred in assessing Plaintiff's credibility. This Court will analyze these objections in turn.

## Applicable Law

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his

previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether he suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

## Analysis

### I. RFC Assessment-Limitations in Concentration, Persistence and Pace and Interaction with Supervisors

Plaintiff argues that the Magistrate Judge erred in finding that, pursuant to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the ALJ properly included an appropriate discussion within the RFC to account for his moderate difficulties with concentration, persistence, and pace. and in the subsequent hypothetical to the vocational expert. The Commissioner argues that the ALJ properly accounted for these difficulties within the RFC by limiting Plaintiff to simple work, and by restricting his ability to work in close proximity to others. The Magistrate Judge recommends finding that the ALJ cited substantial evidence to support a finding that the ALJ adequately considered Plaintiff's moderate limitations in concentration, persistence and pace. Specifically, the Magistrate Judge considered the fact that a state agency consultant found that he was able to maintain concentration and focus, and that his memory was intact. The Magistrate Judge also noted that the ALJ restricted the RFC assessment to jobs that would involve simple instructions, would not be in close proximity or in coordination with

coworkers, would require no ongoing interaction with the public and no more than occasional interaction with supervisors. [ECF #19, p. 25].

In *Mascio*, the claimant objected to the ALJ's failure to conduct a function-by-function analysis of the claimant and the use of a legally insufficient hypothesis to the vocational expert. *Id.* at 635-38. At step three, the ALJ had found that Mascio had an adjustment disorder and also that she had moderate difficulties with concentration, persistence, or pace as a side effect of her pain medication. *Id.* at 637. The *Mascio* court first determined that, depending upon the circumstances of each case, remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. *Id.* at 636. The *Mascio* court also agreed with other circuits that have held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id*. at 638, citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) as joining the Third, Seventh, and Eighth Circuits. However, the *Mascio* court also explained that if the ALJ finds that the limitation in concentration, persistence, and pace does not affect the claimant's ability to work, then it might be appropriate to exclude that information to the vocational expert. *Id.*

Here, the ALJ noted that Plaintiff had a moderate limitation in concentration, persistence, or pace. [ECF #9-2, p. 16]. However, the ALJ also restricted Plaintiff's ability to work with other employees and the public in order to accomodate any concentration deficiencies. Thus, the hypothetical posed to the vocational expert accounted for these limitations by restricting Plaintiff's abilities to account for the work preclusive limitations found in the medical records, including inability to interact well with other co-workers, the public, and other supervisors. The ALJ also noted that other records

11

indicate that Plaintiff could maintain concentration and focus, had good remote memory, and could recall two of four objects after a lapse in time as recorded in a January 2012 examination. The ALJ also referenced a medical note from Dr. Staton indicating Plaintiff's memory was intact. Dr. Ritz observed Plaintiff to be able to conduct simple calculations and maintain concentration and focus. It is therefore clear from the ALJ's decision what evidence he accounted for in analyzing Plaintiff's mental restrictions and how he accounted for limitations in concentration, persistence, or pace as they relate to the RFC, as required by the holding in *Mascio*.

However, Plaintiff further argues that the ALJ did not properly explain the RFC assessment with respect to the limitation to occasional interaction with supervisors. The RFC precludes Plaintiff from working in close proximity or coordination with co-workers and interaction with the public, but it allows for occasional interaction with supervisors. [ECF #9-2, p. 17]. This distinction is important because at the second hearing, the vocational expert testified that if the RFC remained the same, except that the ALJ found that Plaintiff had a "substantial loss of ability" to respond appropriately to supervision and co-workers, there would be no jobs that Plaintiff could perform. [ECF #9-2, p. 50]. The Commissioner argues that substantial evidence supports the ALJ's finding because he considered the entire record in determining the RFC. The Magistrate Judge determined that the ALJ's specification that he limited Plaintiff's ability to "interact with coworkers, supervisors, and the general public" because those restrictions were consistent with GAF scores and other evidence of record was sufficient to recommend that substantial evidence supports the ALJ's findings regarding his interaction with supervisors.

The Appeals Council remanded this case on November 4, 2014, in part, because the original hearing decision did not contain a complete evaluation of the opinion evidence presented by

12

nonexamining State agency consultants. [ECF #9-3, p. 45]. Specifically, the Appeals Council references Dr. Von's opinion, which noted that Plaintiff would have difficulty with authority. The Appeals Council explained that this opinion mirrors Dr. Ritz's notes finding that Plaintiff's anger and irritability could potentially intrude upon his ability to perform in a work-related setting. [ECF #9-3, p. 45]. In the ALJ decision dated June 25, 2015, the ALJ gave "some weight" to Dr. Ritz's conclusion that Plaintiff would have some problems with frequent interaction with co-workers or the public due to anger and irritability. Then, the ALJ stated that he gave "significant weight" to the state agency medical consultants in finding that Plaintiff is limited to his interactions with the general public, co-workers, and supervisors. [ECF #9-2, p. 21]. However, a review of Dr. Von's examination reveals that she rated Plaintiff's social interaction limitations as "moderately limited" with the general public, "moderately limited" with respect to his interaction with peers, and "moderately limited" in his ability to accept instructions and respond appropriately to criticism from supervisors. [ECF #9-3, p. 10]. Moreover, Dr. Von explains that Plaintiff is not suited to work with the public and may not be responsive to supervisory feedback. [ECF #9-3, p. 10]. However, the ALJ did not specifically discuss Dr. Von's assessment in the hearing decision. Given the fact that the Appeals Council specifically noted that Dr. Von's assessment and Dr. Ritz's assessment mirrored each other in its remand order, and the fact that the ALJ apparently gave "significant weight" to the state agency consultant's opinions, this Court cannot determine from the hearing decision whether Dr. Von's opinions were specifically considered in this context. This is particularly problematic because within the RFC, Plaintiff was precluded from working in close proximity with co-workers and the public, but not so limited in his interaction with supervisors, despite the findings of Dr. Von. Moreover, the vocational expert testified that if Plaintiff were found to have a "substantial loss of ability" to respond appropriately to

supervision, there would be no jobs he could do under those circumstances. Accordingly, this Court finds that it is necessary to remand Plaintiff's case back to the administrative law judge to reconsider Plaintiff's RFC, taking into account all the medical evidence in the record, including Dr. Von's determination, specifically as it relates to the findings of Dr. Ritz, related to interaction with supervisors to determine whether Plaintiff is so limited in his interactions with supervisors as to preclude any jobs in the workforce.

**II. Opinion Evidence**

Plaintiff further argues that the ALJ did not consider one of Dr. Staton's opinions and failed to appropriately consider Dr. Staton's opinion as a treating physician. The Magistrate Judge recommended that this Court find that the ALJ considered the relevant factors in evaluating Dr. Staton's opinion. With respect to the failure of the ALJ to explicity consider the May 2012 opinion of Dr. Staton, the Magistrate Court recommended finding that it was harmless error because the ALJ would have reached the same result.

Within the decision, the ALJ determined that Dr. Staton's opinions were not entitled to controlling weight because they were not well-supported by the evidence. The ALJ explained that he gave little weight the opinions provided by Dr. Staton because the ALJ found a review of the evidence of record did not support his findings. However, this Court recognizes that previously in the decision, the ALJ relies upon one of Dr. Staton's treatment notes explainting that Plaintiff was cooperative in a December 2013 appointment, to support his assessment in analyzing Plaintiff's social functioning. [ECF #9-2, p. 16]. Thus, it appears that while affording Dr. Staton's opinions little weight generally, the ALJ also relies upon the medical records to support an analysis of Plaintiff's social functioning elsewhere. In any event, because this Court is remanding this case to reconsider Plaintiff's interactions

with supervisors as outlined above, this Court finds it prudent for the ALJ to consider all of Dr. Staton's opinions, including his opinion from May of 2012, as it was previously not addressed in the hearing decision.[2] Accordingly, this Court additionally remands this case to reconsider Dr. Staton's opinions, specifically taking into account all three of Dr. Staton's questionnaires within the record.

### III. Credibility

Plaintiff's final objection is that the Magistrate Judge erred in finding that the ALJ properly evaluated his credibility in accordance with SSR 96-7p. The Commissioner argues that the ALJ considered all of the evidence in concluding that Plaintiff's subjective complaints were not fully supported by the record. The ALJ determined that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible because the medical records and other evidence do not support his allegations. At the time of the hearing decision, SSR 96-7p was in effect. Under that ruling, a two-step process is used to evaluate symptoms alleged by a claimant such as pain, weakness, fatigue, shortness of breath, and nervousness. First, the ALJ determines whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or symptoms. Second, once that has been shown, the ALJ then evaluates the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the ability of the individual to perform basic work activities. *See generally Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996) ([A] credibility determination involves a two-step process: (1) evaluating subjective complaints of pain by reviewing the objective medical evidence to determine whether there is an underlying impairment that

---

[2] This Court also notes that the ALJ based his opinion of Dr. Pearsall's testimony on the opinion testimony and subsequent weight afford to the opinion of Dr. Staton. However, Plaintiff did not object to the ALJ's analysis of Dr. Pearsall's testimony.

would reasonably be expected to cause the severity and persistence of the alleged pain; and (2) in consideration of the entire record, assess the credibility of the severity of the subjective complaints.). The ALJ should consider the following when evaluating the intensity and persistence of a claimant's pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain; (5) treatment, other than medication, the claimant receives or has received for relief of the pain; (6) any measures the claimant uses or has used to relieve the pain; and (7) any other factors concerning functional limitations and restrictions due to pain. 20 C.F.R. § 404.1529(c)(3). The Magistrate Judge determined that the ALJ's decision was supported by substantial evidence.

This Court finds that the ALJ provided substantial evidence to support the credibility determination of Plaintiff in this case. Here, the ALJ evaluated the medical notes within the record, which included Plaintiff's subjective complaints. He also evaluated the opinions of the treating doctors, the state agency consultants, and Mrs. Rella, Plaintiff's wife. The ALJ specifically considered the fact that while Plaintiff alleged his medications were ineffective in one instance, Plaintiff also reported that his medications were "helpful and well-tolerated." The ALJ considered the fact that Plaintiff generally received conservative treatment, which he apparently felt tended to negate Plaintiff's allegations of more serious issues with his mental conditions. Of apparent significance to the ALJ was also the fact that Plaintiff was able to live with his family, shop and perform other personal and daily care activities, and was cooperative at his doctor visits. [ECF #9-2, pp. 18-19]. The ALJ also found significant the fact that Plaintiff worked for nine years with a bipolar diagnosis. [ECF #9-2, p. 19]. With respect to the reference in the hearing decision regarding the infrequency of Plaintiff's medical treatment, this Court

16

agrees with the Magistrate Judge that the ALJ's decision does not indicate that he drew an impermissible inference about Plaintiff's symptoms based on his failure to pursue frequent medical treatment. In addition to this information, the ALJ provided adequate references to the record regarding Plaintiff's ability to participate in activities of daily living, that he requested changes in medications, and at times noted that his medications were "helpful and well-tolerated." The ALJ specifically considered the police reports and found that they were not indicative of a severe mental illness, but rather a hostile relationship between neighbors. While Plaintiff did testify to the fact that he could not afford frequent medical treatment, the ALJ did not explicitly indicate that he found Plaintiff less credible based on the infrequency of his medical treatment. Furthermore, this Court cannot make its own credibility determinations but may review the ALJ's decision to determine whether substantial evidence supports the ALJ's credibility assessment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). Here, the Court finds that the ALJ's credibility determination is supported by substantial evidence in the record. Accordingly, this objection is overruled.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court respectfully rejects the recommendation of the Magistrate Judge. [ECF #19]. The action is remanded to the Commissioner to properly evaluate the Plaintiff's RFC, including specifically considering Dr. Von's opinion consistent with the analysis above and to reconsider all three of Dr. Staton's opinions. The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and the case is remanded to the Commissioner for further administrative action.

**IT IS SO ORDERED.**

Florence, South Carolina                                                   s/ R. Bryan Harwell
November 17, 2017                                                       R. Bryan Harwell
                                                                                            United States District Judge